THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **BAYOU PUMPS & PRODUCTS, INC.** | \* | **CIVIL ACTION NO. 06-0962** |
| **VERSUS** | \* | **JUDGE JAMES** |
| **DISCFLO CORPORATION AND MAX I. GURTH** | \* | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Disqualify Counsel[1] (Doc. #20) filed by Defendants, Discflo Corporation ("Discflo") and Max I. Gurth ("Gurth"). Plaintiff, Bayou Pumps & Products, Inc. ("Bayou Pumps") opposes the motion. On October 18, 2006, the undersigned held an evidentiary hearing on the motion. For the reasons stated below, Defendant's Motion to Disqualify Counsel (Doc. #20) is **DENIED**.

## STATEMENT OF FACTS

Discflo manufactures rotary pumps for a variety of industrial applications. According to the original petition, in 2001, Discflo entered into an exclusive distributor relationship with Bayou Pumps to represent Discflo products in the states of Louisiana, Arkansas, and Mississippi. The parties subsequently added the states of Tennessee, Georgia, and parts of Texas to Bayou Pumps' territory. By letter dated March 13, 2006, Discflo sent the following notice to Bayou Pumps:

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the District Judge in accordance with Rule 72(a) and L.R. 74.1(W).

1

> Dear Distributors
>
> Please be advised that beginning March 15, 2006, all distributor agreements and/or contracts will be null and void. We have no record of any previous agreements entered into with the previous management. Sales territories and quotas will soon be restructured. Please continue business as normal, we will send copies of the updated contracts shortly. If there are any questions or concerns, please don't hesitate to call.
>
> Max I Gurth
>
> President/CEO

Bayou Pumps alleges that only a few of Discflo's distributors received the March 13th letter and that the other distributors who received it were told by Discflo that the notice was not applicable to their respective distributorships. Bayou Pumps contends that it is the only distributor impacted by the letter and that the letter was addressed to all distributors as a pretext to suppress the fact that Bayou Pumps was being singled out for cancellation. Denny Lawrence, on behalf of Bayou Pumps, received an e-mail from Discflo on April 20, 2006, stating in part

> After much consideration, it was decided to continue your distributorship in Louisiana and the southern section of Mississippi.
>
> Upon further consideration it was also determined to remove your distributorship in the states of Arkansas and Tennessee.
>
> Based on the "pump market" in Louisiana and the Southern section of Mississippi, it is our expectation that you should produce no less than $1.5 million in gross sales, in order to maintain your distributorship in those territories.

On May 17, 2006, Bayou Pumps filed suit in the Third Judicial District Court of Louisiana, in Union Parish, against Discflo and Gurth, and the suit was timely removed to this court on June 8, 2006. Bayou Pumps' suit alleges breach of contract, bad faith, wrongful interference with contract, fraud, negligent misrepresentation, unfair competition, and claims under Arkansas, Tennessee, Mississippi, and California state laws. Bayou Pumps alleges that

Discflo unlawfully and improperly terminated the distributorship relationship, appointed itself or another distributor to Bayou Pumps' territory, failed to give Bayou Pumps notice and the opportunity to recoup its investment in the Discflo product line before unilaterally terminating the distributorship, terminated the distributorship without cause and without notice or the opportunity to cure, and conspired to eliminate Bayou Pumps and divert Bayou Pumps' business to itself or competing distributors. Bayou Pumps further alleges that defendant Gurth is the alter ego of Discflo such that he should be held individually liable for its actions.

John Ashley Moore ("Moore") and William H. L. Kaufman ("Kaufman") of the law firm Taylor, Porter, Brooks & Phillips, L.L.P. ("Taylor Porter") represent Bayou Pumps. Defendants filed the pending Motion to Disqualify Counsel, contending that Gurth and Discflo are former clients of Moore's and therefore a conflict of interest exists requiring the disqualification of Moore and Taylor Porter.[2]

Motion to Disqualify

The pleadings and evidence in this matter establish the following: Prior to 1996, Denny Lawrence ("Lawrence") owned Bayou Pumps, Inc., which had been a distributor for Discflo. In 1996, Lawrence sold Bayou Pumps, Inc., to DXP/Sepco ("Sepco") in exchange for stock in Sepco, and Lawrence became an employee of Sepco. At the time of the sale, Sepco was also a distributor for Discflo, so Lawrence continued to sell Discflo products through Sepco.

In 1997, Lawrence became dissatisfied with his agreement with Sepco. At that time, Lawrence engaged Moore and Taylor Porter as legal counsel to advise him on his situation with Sepco. In July 1998, with Moore's assistance, Lawrence terminated his employment with Sepco

---

[2]Bayou Pumps acknowledges that a disqualification of Moore would be imputed to the entire Taylor Porter law firm.

which repurchased his stock through a stock purchase agreement. As part of the settlement agreement, Lawrence agreed to a non-compete agreement through July 1999 which prohibited Lawrence from selling Discflo pumps in territory assigned to Sepco under its Distributorship Agreement with Discflo, but not in territory outside of that assigned to Sepco.

In July 1998, Discflo assigned Lawrence the title of Eastern Regional Manger. In this capacity, Lawrence was limited to supervising Sepco and providing technical assistance to end users of Discflo products in the territory assigned to Sepco under the Distributorship Agreement. In unassigned territory in the eastern United States, where Lawrence was not subject to the non-compete agreement, he sold Discflo products on commission through his consulting company as well as providing technical assistance to end users.

Beginning in August 1998, Discflo began an effort to limit or terminate its distributorship agreement with Sepco. Discflo was not satisfied with the sales activity of Sepco, and both Lawrence and Sepco were interested in terminating the distributorship agreement with Sepco so that Lawrence could reacquire the distribution rights in Sepco's territory. In January 1999, Lawrence and Moore traveled to the Discflo offices in El Cajon, California. Gurth, the President and CEO of Discflo, held a meeting in his office. In attendance at the meeting were Lawrence[3], Moore, Gurth, Robert Gallegos ("Gallegos"), the General Manager of Discflo, and Jan Beeman ("Beeman"), the Corporate Secretary of Discflo.

Defendants argue that Moore previously represented Discflo on the Sepco transaction and that this representation allowed Moore to gain access to Discflo policies and procedures relating to distributorship agreements and the termination of such agreements. In their memorandum in

---

[3] Defendants argue that Lawrence was not present at the January 1999 meeting. However, the undersigned finds, based on the testimony and evidence presented at the hearing, that Lawrence was in fact present.

4

support of their motion to disqualify counsel (Doc. #20-2 at pp. 2-4), Defendants contend that Discflo and Gurth retained Moore and Taylor Porter to "represent them on matters related to their distributorship practices and the very distributorship agreement on which [Bayou Pumps] bases its claims in this lawsuit." They further contend that Moore "provided legal advice on an array of general corporate matters that now form the basis of [Bayou Pump's] claims against Gurth."

Defendants admit that the contract which was initially involved was the Sepco contract, and claim that Moore consulted with Discflo regarding the potential interpretations and consequences of its comprehensive Distributorship Agreement, and that he also drafted an addendum to the Discflo Distributorship Agreement with Sepco. Defendants further claim that, during the Discflo-Sepco transaction, they sought Moore's advice on how Discflo could improve its distributorship practices and "freely provided Moore with confidential company information, including Discflo's philosophy toward its distributorship arrangements, its policies and procedures related to distributorship relationships in general, the business/financial reasons for entering such relationships, the intended scope of these agreements, the objectives for inclusion of various contract provisions, the interpretation of various contract provisions, and the circumstances that constitute grounds for termination of these agreements." They also claim that, after consultation with Discflo, Moore recommended that Discflo rewrite its Distributorship Agreements and offered his services to assist in the process. They admit that the subject matter of Moore's representation was the termination of the Sepco distributorship agreement for non-performance on the part of certain Sepco branches, but argue that discussions regarding the Discflo Distributorship Agreement, in general, were a necessary part of the representation. They point out that Moore conferred with Gurth and drafted a letter on behalf of Discflo regarding the termination of the Sepco distributorship.

5

Finally, Defendants contend that Moore represented Discflo and Gurth on corporate matters in that he "advised Gurth on how to secure his majority shareholder position with the company, how to improve his compensation package, and how to protect his personal financial contributions to the company." They claim that, at Moore's request, Gurth provided Moore with his personal financial information, as well as confidential financial information of the company.

In opposition to the motion, Plaintiff contended that the meeting in California was informal and brief, and that Moore represented Lawrence throughout the Meeting. The main focus of the meeting was Lawrence's interest in again becoming a Discflo distributor in Arkansas, Louisiana, and perhaps other trade territories, and how the new arrangement might fit with the existing agreement between Discflo and Sepco. They also discussed Discflo's industry position and Gurth's apprehension about Discflo's potentially being acquired by a larger competitor.

Plaintiff admits that, at some point during the meeting, Gurth asked Moore questions about how to prevent a "hostile takeover," as well as general corporate matters, but claims that Moore did not give Gurth any definite answers or specific recommendations, and that Moore stated that he was not a California lawyer and thus was not able to advise Gurth or Discflo about matters implicating California law.

Plaintiff argues that at no time did Gurth, Gallegos, or Beeman attempt to exclude or excuse Lawrence from the general conversation, and that Lawrence was present during the entirety of the meeting. Plaintiff denies that any confidential Discflo corporate or distributor strategies were disclosed to either Moore or Lawrence, and that it was obvious that any information provided to Moore was also intended to be shared with Lawrence. (Plaintiff's Opposition Doc. #30-4 pg. 4).

At the hearing and in their post-hearing memorandum, Moore and Taylor Porter acknowledge that, upon further investigation of their records, they have learned that they did begin work on some corporate issues for Discflo, but point out that none of that work was finalized or sent to the client and that they did not bill Discflo for any of the later work. Moore and Taylor Porter also point out that the contract at issue in this lawsuit was not entered into until 2001 and that the language of the 2001 contract is not identical to the language of the Sepco contract. They also argue that the contemplated shareholder derivative suit is not before this court and that the bases for such a suit and for the claim that Gurth is the alter ego of Discflo or were found in financial records from 2003 and 2004, not from the time period during which Moore represented Discflo.

## LAW AND ANALYSIS

Motions to disqualify counsel are governed by state and national ethical standards adopted by the court. *Horaist v. Doctor's Hosp.*, 255 F.3d 261, 266 (5th Cir.2001) (citing *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992)). However, whether and how these rules are applied are questions of federal law. *In re American* at 610.

Ethical cannons relevant to a motion to disqualify include 1) the local rules of the Western District of Louisiana; 2) the American Bar Association's ("ABA's") Model Rules of Professional Conduct; and 3) the state rules of attorney conduct. *Horaist* at 266. The Rules of the Western District of Louisiana specifically adopt the Rules of Professional Conduct of the Louisiana State Bar Association. *See* La. Uniform R. U.S. Dist. Ct. LR83.2.4W.

The applicable Rules of Professional Conduct, in pertinent part, are:

**Rule 1.9 - Duties to Former Clients**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1) whose interests are materially adverse to that person; and

    (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

    (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

    (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

*State Bar Articles of Incorporation*, Art. 16, Rules of Prof. Conduct, Rule 1.9, LSA-R.S. foll. 37:222.

**Rule 1.10 - Imputation of Conflicts: General Rule**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:

    (1) the matter is the same or substantially related to that in which the formerly

>     associated lawyer represented the client; and
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

*State Bar Articles of Incorporation*, Art. 16, Rules of Prof. Conduct, Rule 1.10, LSA-R.S. foll. 37:222.

The Fifth Circuit applies a two prong test in determining whether to disqualify an attorney on the grounds of former representation.

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish 2 elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and (2) a substantial relationship between the subject matter of the former and present representations.

*American Airlines, Inc.*, 972 F.2d at 614 (citation omitted).

The *American Airlines* case went on to make it clear that the above test should not be applied

> in a mechanical way that might prevent an attorney from ever representing an interest adverse to that of a former client. . . . Rather, a substantial relationship may be found only after "the moving party delineates with specificity the subject matters, issues, and causes of action" common to prior and current representations and the court engages in a "painstaking analysis of the facts and precise application of precedent."

*Id.* citations omitted.

While the advice rendered in connection with the prior representation need not be relevant in the evidentiary sense to the present litigation, it does need to "be akin to the present litigation in a way that reasonable persons would understand as important to the issues involved." *Id*. at 618-19.

In this case, the evidence establishes that there was an attorney-client relationship

9

between Moore and Discflo which began around August of 1998, and ended in February or March of 1999. It is also clear from the record before this court that Moore had a pre-existing relationship with Lawrence; that although Moore represented Lawrence and Discflo jointly regarding the distributorship agreement with Sepco, Lawrence was Moore's primary client on that issue; that Discflo was aware that Moore primarily represented Lawrence; and that the joint representation was primarily concerned with helping Denny Lawrence achieve his goal of regaining the distributorship territories held by Sepco.

The evidence supporting a claim that there was an attorney-client relationship between Moore and Gurth individually is not convincing. The information provided by Gurth to Moore was all related to his position as President of Discflo and his contributions to the corporation. He did not provide Moore with a personal financial statement or with any personal information unrelated to Discflo. Most of the communication from Discflo to Moore was made through Jan Beeman, a Discflo employee. The correspondence between the two was all in Gurth's capacity as President of Discflo, and not in his individual capacity.

Of course, for purposes of this ruling, the fact of an attorney-client relationship between Discflo and Moore is sufficient to necessitate determination of the second element of the disqualification test: substantial relationship.

First, in addressing the corporate information provided by Discflo, the undersigned notes that the information provided was all of a type that Lawrence, as a shareholder in the corporation, should have had access to and therefore Discflo could not reasonably have expected that information to be privileged as between itself and Lawrence. More importantly, the information is not substantially related to the current action because it concerned Discflo's financial situation

10

in 1998 and before, and thus could have little or no relevance to a contract which was not entered into until 2001. Likewise, a 1998 snapshot of Discflo's financial situation will not support an argument that Gurth is the alter ego of Discflo. Furthermore, any causes of action which might give rise to a share-holder derivative suit are not before this court at all and therefore have no relevance to the current inquiry. In any case, those allegations concern alleged conduct by Gurth which occurred years after the brief representation of Discflo by Moore had ended. Moore could not have been given confidential information regarding matters which had not occurred at the time of his representation.

As for the breach of contract claim involved in the current suit, the undersigned finds that because the defendants were well aware of Moore's representation of Lawrence at the time of the joint representation and of his continuing representation of Lawrence thereafter, Discflo had no reasonable expectation that any such information would not be shared with Lawrence. In addition, because the contract on which the current action is based was not entered into until 2001, again several years after any representation of Discflo by Moore had ceased, the information regarding a different contract and involving different provisions of that contract from those implicated by the present dispute is not substantially similar to the present matter.

The defendants argue that Moore's reminder in his 1998 letter to Discflo that, if it did not want to renew its contract with Sepco, it would need to send written notice at least 30 days prior to the end of the term is sufficient to meet its burden of proving that the prior and current matters are substantially related because both involve termination of contracts. Given the demand for painstaking analysis of the facts required by the law governing disqualification, the undersigned does not believe that the court can paint with so broad a brush. The situation at issue in this case

11

does not involve termination or non-renewal of a contract at the end of a term; it involves an alleged improper termination of a contract **during** a term. In addition, there is no indication that the comment in Moore's 1998 letter was anything more than a friendly reminder; there is no evidence that Discflo desired to completely end its contract with Sepco during the time Moore was involved.

Certainly, the passage of time alone has diluted any possible advantage that Moore might have gained from his prior representation of Discflo, because neither he nor his client could reasonably rely on information which is more than seven years old in preparing for trial or to prove the pending claims. *See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 479 F.Supp. 465 (E.D. La. 1979); see also, *Somascan Plaza, Inc. v. Siemens Medical Systems, Inc.,* 187 F.R.D. 34 (D. Puerto Rico, 1999); *Bennett Silvershein Associates v. Furman,* 776 F.Supp. 800 (S.D. N.Y. 1991); *Neiman v Local 144,* 512 F.Supp 187 (E.D. N.Y. 1981).

The contract between Discflo and Bayou Pumps was not even entered into until 2001, three years after Moore's last representation of Discflo. Even if the language of the contract at issue were identical to the language of the Sepco contract (and a review of the two contracts confirms that it is not)[4], the matters in question involve two different contracts with different parties. Therefore, although there is a relationship between the current matter and the prior representation, in that both involve contracts, that superficial relationship does not stand up to the detailed analysis required to justify disqualification of the plaintiff's counsel. In fact, Max Gurth admitted at the hearing on this motion that he did not rely on any contractual provision in

---

[4] Compare defendant's Exhibit 217 at pp.100-108 (the Sepco contract) with Exhibit 1 attached to plaintiff's original petition (the Bayou Pumps contract).

terminating Discflo's distributorship and that the reason he sent the termination letter was because he could not find a copy of the Bayou Pumps contract at all.

"When dealing with ethical principles, we cannot paint with broad strokes. The lines are fine and must be so marked. (T)he conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent." *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 173-74 (5th Cir. 1979) (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

"Merely pointing to a superficial resemblance between the present and the prior representations will not substitute for the careful consideration demanded by our cases." *Duncan v. Merrill Lynch,* 646 F.2d 1020, 1029 (5th Cir. 1981), *disavowed on an unrelated issue* by *Gibbs v. Paluk,* 742 F.2d 181 (5th Cir. 1984).

The undersigned does NOT find that Discflo or Gurth in fact provided Moore with any confidential information which could be relevant to the present matter. The financial information provided by Gurth was not his personal financial information; it was information regarding his loans and guarantees for Discflo, and was the type of information that should have been readily available to any stockholder in the company. In addition, given the fact that the representation in question was of a brief duration and ended in early 1999, any financial information regarding Discflo is far too stale to be of any consequence in these proceedings.

As was pointed out by the court in *George v. LeBlanc,* 78 F.R.D. 281, 287-88 (N.D. Tex. 19770, aff'd 565 F.2d 1218 (5th Cir. 1977), the rule at issue herein was formulated to handle situations where an attorney switches to a new client who is on the opposite side from a former client on a common issue. Such is not the case in the matter now before the court because Moore

represented Lawrence at all times pertinent hereto. He is not seeking to switch sides or to represent a new client.

> Comment [2] to Rule 1.9 of the ABA Model Rules states as follows in pertinent part: The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

In this case, although the type of problem is similar in that both involve distribution agreements, the issues are factually distinct. Moore cannot be justly regarded as changing sides in this matter.

Furthermore, the contractual provisions which Discflo claims Moore gave it advice about were simply standard contractual provisions common in the industry. Discflo admitted that it obtained the contract language from industry sources and that there was nothing unique about the language. Discflo did not provide the court with any specific advice from Moore on which it relied and which is substantially related to the current suit.

Finally, the aborted attempt that Moore and Taylor Porter made to address issues involving California law and protecting Gurth's controlling interest in Discflo never reached a stage that was or could have been presented to the client, and although internal time records were kept, Discflo was never billed for the work. Moore obviously should have sent Discflo a non-engagement or dis-engagement letter in response to Discflo's inquiry of March 1999, but the record indicates that, for whatever reason, Moore decided that he could not represent Discflo in

14

its corporate matters.

The defendants also argue that this court should base its ruling on alleged ethical violations by Moore, including practicing law in California without a license and making false statements in his affidavit to the court. First, researching the law of another state does not constitute practicing law in that state. In fact, one reasonable explanation for Moore's decision not to provide any work product to Discflo or to bill for the work relating to the corporate matters he researched could be a recognition that he could not do the work without practicing law in California. At the hearing on this motion, the defendants suggested that Moore ceased representing Discflo because he recognized a conflict between Discflo and Lawrence regarding Discflo's payment for Lawrence's expenses. If that was the case, then Moore's action in ceasing representation of Discflo in light of his recognition of a possible conflict between it and his existing client Lawrence would actually have been the proper action to take, and would not be grounds for disqualifying him in this matter. The record does not contain any explanation for Moore's decision not to represent Discflo, but it is clear that such a decision was made, and that Moore's actions did not constitute the unlicensed practice of law in California.

As for Moore's affidavit, the undersigned finds that the statements made therein were not false at the time they were made, based on the documents actually contained in Taylor Porter's Discflo file. There is no evidence to support a claim that Moore had or was aware of the later-discovered documents at the time he signed his affidavit. Taylor Porter went to great lengths to recover the draft documents and un-billed time entries on which the defendants base their claims that Moore's affidavit was false, and promptly turned those records over to the defendants' counsel. Those documents were not readily available, and defendants have presented no basis for this court to find that Moore had a duty to go to extraordinary lengths to find the documents

15

before signing his affidavit. While the statements in the affidavit would be false if made based on the information now available, there is no showing that the statements were made in bad faith at the time that the affidavit was signed.

Finally, to say that Moore was not a model of cooperation on the witness stand is perhaps understating his performance; however, nothing in his ultimate testimony leads the undersigned to believe that he should be disqualified from representing Lawrence in these proceedings on that basis either. The undersigned is aware of the adversarial nature of these proceedings, and the animosity which has apparently developed among the parties and their counsel. However, the advantage to the defendants which would result from depriving the plaintiff of his long time counsel requires that such an action is not to be taken lightly and not without requiring the defendants to carry their burden of proof as to each element of the test for disqualification. While at first glance the prior representation appears to have been related to the present one, upon performing the painstaking analysis required in these circumstances, the undersigned has concluded that, although it is a close question, the evidence is insufficient to meet the moving party's burden of proof, and that the matters are not substantially related.

Therefore, the Defendant's Motion to Disqualify Counsel of Plaintiff (Doc. #20) is **DENIED**. **THUS DONE AND SIGNED** this 13th day of December, 2006, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE